The People, *ex rel.* Peter A. Zimmer and others, *vs.* Isaac J. Barber and others, commissioners of highways of the town of Wright.

By the 8th section of the act of 1847, in relation to town officers, (*Laws of 1847, p.* 584,) which declares that referees appointed to hear and determine appeals from the decision of commissioners of highways, in laying out, altering, or discontinuing a road, or in refusing to do so, " shall possess all the powers, and discharge all the duties, heretofore possessed and discharged *by the three judges,"* the same three judges are intended who had been previously mentioned in the same section, viz. the three judges of the court of common pleas specified in the 84th section of the chapter of the revised statutes relating to highways, &c.

Accordingly, where referees appointed to hear and determine an appeal from a decision of commissioners of highways in refusing to lay out a road, reverse the decision, it is their duty to proceed and lay out the road, as directed by the 91st section of the revised statutes, (1 *R. S.* 519,) and in case of their refusal to do so, a mandamus will lie.

Motion for peremptory mandamus. Application having been made to the defendants according to law, to lay out a road in the town of Wright, and the defendants having refused to lay out the road, the relators appealed from their determination to the county judge of Schoharie. Referees were thereupon appointed, in pursuance of the provisions of the act of December 14, 1847, to hear and determine the appeal. The referees reversed the decision of the commissioners, and proceeded to lay out the road. The defendants having refused to open the road thus laid out by the referees, an alternative mandamus was issued, in October, 1850, commanding the defendants forthwith to cause the damages to be assessed and the road to be opened, or show cause, &c.

The defendants made a return to the writ, in which they stated that the road had not been laid out according to law, so as to authorize the defendants to cause the same to be opened and worked; that no application in writing, addressed to the commissioners and signed by the persons applying for the road, had ever been made ; that they had no notice of the meeting of the referees when they made their final determination. Upon the questions whether application had been made for the laying

out of the road, and whether the defendants had notice of the meeting of the referees, issue was joined, and having been tried by a jury, the issues were found in favor of the relators.

The relators now applied for a peremptory mandamus to compel the defendants to open and work the road.

*R. Brewster* and *J. Houck Jr.* for relators.

*R. C. Martin,* for the defendants.

HARRIS, J. Though the relators have succeeded upon the issues of fact, an important legal question is still undecided. The defendants contend that the referees, in proceeding to lay out the road, after reversing the order of the commissioners, transcended their authority. If this be so, they are, of course, right in refusing to open the road. Their own proceedings would be illegal, if they were to attempt to do so.

The 8th section of the act of 1847, in relation to town officers, (*Sess. L. of* 1847, *p.* 584,) declares, that referees appointed for the purpose, and as the referees in this case were appointed, " shall possess all the powers, and discharge all the duties heretofore possessed and discharged by the three judges." What three judges are here intended? Are they the judges who were to be associated together under the 10th section of the act of 1845, in relation to town officers, (*Sess. L.* 1845, *p.* 185,) or are they the three judges mentioned in the 84th section of the chapter of the revised statutes relating to highways, &c. ? (1 *R. S.* 518.) If the former were intended, then the referees had no power to lay out the road ; if the latter, then it was their duty, having reversed the determination of the commissioners, to proceed and lay out the road as directed by the 91st section of the act last mentioned.

Prior to the act of 1845, the judges who reviewed the proceedings of the commissioners upon appeal, proceeded, if the decision was reversed, to lay out the road. (*The People* v. *Champion,* 16 *John.* 61. 1 *R. S.* 519, § 91.) The act of 1845 makes it

The People *v.* Barber.

the duty of the commissioners, and not the judges, to lay out the road. (*Sess. L.* 1845, *p.* 186, § 13.)

The language of the 8th section of the act of 1847, already cited, would be satisfied by referring it to either of the statutes mentioned. In the absence of any thing else in the act, indicating the intention of the legislature on the subject, it would perhaps be most natural to refer it to the judges mentioned in the act of 1845, that act having been more recently enacted, and being operative at the time the act of 1847 was passed. It was upon this ground that the learned judge whose opinion, in manuscript, was read upon the argument of this motion, held, that "*the three judges*" meant the judges who were associated together under the provisions of the act of 1845. This, I admit, was my own view of the question when I heard it argued. But upon more careful examination I think I find, within the section itself, more satisfactory evidence that by "the three judges" in the passage quoted, the legislature intended "the three judges," who heard the appeal under the provisions of the revised statutes. The section begins by providing for an appeal to the county judge "in the same manner as appeals were heretofore allowed, (not to three judges under the act of 1845, but) to three judges under title first, article fourth, chapter sixteenth, part first of the revised statutes." It then provides for the appointment of referees by the county judge to whom the appeal is brought, and having provided for their appointment, it proceeds to confer upon them the powers and duties which had been possessed and discharged "*by the three judges.*" What three judges? I again ask. In the preceding part of the section, it will not be denied, the legislature referred to three judges who were authorized to act under the provisions of the revised statutes relating to highways. It there speaks generally of *three judges.* In the latter part of the section, when declaring the powers, &c. of the referees, it invests them with all the powers and imposes on them all the duties which had been possessed and discharged by "*the* three judges." Can it be supposed that in one branch of the section the legislature intended to refer to the judges whose powers and duties were defined in the revised

Watson *v.* Bennett.

statutes, and in the other branch to another set of judges whose powers and duties were defined by the act of 1845? Upon reading the whole section together, I can not doubt that by "the three judges" in the clause first cited, the same three judges are intended who had been previously mentioned in the same section. If this be so, it is clear that the referees but discharged their duty when, having reviewed the decision which it was their duty to review, they proceeded to lay out the road.

The proceedings of the referees being thus authorized by law, and their decision being final, it was the duty of the defendants to open the road. The relators, therefore, are entitled to a peremptory mandamus.

[SCHOHARIE SPECIAL TERM, October 20, 1851. *Harris*, Justice.]